IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAJOR KEITH TOLBERT, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-0547 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his robbery conviction.  Respondent filed a motion for summary judgment (Docket Entry No. 15), to which petitioner filed a response (Docket Entry No. 17).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

Petitioner was convicted of robbery in February of 2008 and sentenced to thirty-five years incarceration.  The conviction was affirmed on appeal.  *Tolbert v. State*, No. 14-08-00140-CR (Tex. App – Houston [14th Dist.] 2008, pet. ref'd).  The Texas Court of Criminal Appeals refused discretionary review, and denied petitioner's application for state habeas relief without a written order.  *Ex parte Tolbert*, WR-72,885-01.

Petitioner filed the instant federal habeas petition on February 11, 2010, raising the following three grounds for relief:

(1)    The evidence is insufficient because complainant's visual identification of petitioner was not "100% certain."

(2)    The prosecution failed to disclose exculpatory evidence of a gun allegedly used in the robbery.

(3)    Trial counsel was ineffective in failing to object and move for a mistrial because complainant's visual identification of petitioner was not "100% certain."

Respondent argues that these claims are procedurally barred and/or without merit.

*Factual Background*

The state court of appeals made the following statement of facts in its opinion:

Around 8:30 p.m. on April 19, 2007, Angela Feit, the complainant, was at a gas station putting air in her tires. She chose this gas station because it was well lighted and seemed safe. As she filled her tires, she noticed a man looking at her car. The man walked around to the passenger side of Feit's car, seemed to look in, and walked to the rear of her car. The man then walked toward a red Cadillac, spoke to the driver, and returned to Feit. He demanded Feit open her car door and give him her purse. When Feit hesitated, the man repeated his demand and, with his hand in his waist band, told Feit he had a gun and would shoot her. Feit fumbled for her keys, opened her car door, and handed the man her purse. The man walked away and got into the passenger seat of the Cadillac.

During the encounter, Feit was about two to three feet from the man. She initially could not see his face clearly because she was crouched down filling her tires. When she handed him her purse, however, she tried to get as good a look at his face as possible. The area was illuminated by a street light, and there was also good light from the gas station.

2

As she watched the Cadillac drive away, Feit repeated the license plate numbers and letters over and over in her head.  She immediately called 911 and related the incident and the license plate number.  When the officers arrived a few minutes later, she gave them a brief statement and a description of the man.  She described the getaway car as a red four-door Cadillac with a white top and described her attacker as wearing jeans and a light-colored tee-shirt.

Feit went home, and almost immediately a police officer arrived.  He told her they found the car matching her earlier description and apprehended two men.  The officer asked Feit to go with him to see whether she could identify them.  Feit agreed, and the officer took her to the parking lot where the officers had detained the men.  Feit identified appellant as the person who took her purse.  Appellant was arrested and charged with robbery.

Appellant filed a pre-trial motion to suppress identification evidence.  At the suppression hearing, Feit testified the lighting in the parking lot enabled her to get a 'good look' at appellant.  Feit had noticed appellant before the robbery because he walked around her car.  Appellant was only two to three feet away from Feit when he demanded her purse.

Feit also testified she was told that the two persons at the show-up were the men in the Cadillac she had identified.  The officers, however, did not tell Feit the men were involved in the robbery; they simply asked her whether she recognized them.  Feit was 'a few yards' away when she saw each man, and the officers pointed a spotlight on them.  The officers took one man out of the police car for Feit to identify, and Feit 'knew right away' this man was not her attacker.

When they showed Feit the second man, she believed this was the person who had held her up.  She recognized him from his build, facial characteristics, and 'from just looking at his face.'  She was seventy-five to eighty percent sure, but was not completely confident.  Feit told the officers she knew she would definitely recognize the man's voice.

The officers situated Feit so she could clearly hear the man's voice and told him to say 'purse,' 'gun,' and 'shoot.'  When he spoke, Feit was sure this was the man who had robbed her.  She testified that appellant had 'a very

distinctive voice.  Some voices stay with you, and that night that voice stayed in my head.'

Appellant called Officer William Davis, who was the primary officer in the case and testified Feit described 'the information she got from her attacker,' as well as the car and license number.  Within twenty to twenty-five minutes after Davis received the call about the robbery, another officer stopped the Cadillac Feit had described.  Davis confirmed that no one told Feit she had to identify appellant or suggested that he was the one who robbed her.

The trial court denied appellant's motion to suppress, and the case proceeded to trial.  At trial,  Feit reiterated substantially the same testimony she gave at the suppression hearing.  She also identified appellant as the person who robbed her.  In addition to Feit and Davis, three other persons involved in the investigation testif[i]ed.

Officer Nathan Wackman testified he responded to Feit's robbery call and was present when she identified appellant as her attacker.  No one suggested Feit 'needed to identify those two suspects.'

Harris County Deputy Constable Gerald Hall testified he stopped the red Cadillac that night and appellant was in the passenger seat.  Appellant fled on foot, but Hall located him a few blocks away, hiding in a shed.

Police Sergeant Kenneth Campbell testified he spoke to appellant at the scene and noticed he had 'a very distinctive voice.'  He described procedures the police used for the identification.  Campbell explained that he tries to be impartial and does not ask leading questions.  He testified Feit did not seem hesitant in her identification of appellant – 'she seemed pretty sure.'  He explained he watched Feit's face during the voice identification, and, when appellant spoke, 'basically that hit on something.'  Campbell testified Feit said, 'that's him, that's him, that's him.'  Campbell also testified he discovered that, on the night of the robbery, Feit's credit card was used at a store located between the robbery and arrest sites.

After the State rested, the court heard appellant's motion to exclude several prior convictions the State intended to use for impeachment or punishment.  Appellant argued these convictions were too similar to the charged offense, were remote, and the prejudicial effect outweighed the probative value.  The trial court indicated it would allow evidence of three of the offenses – a 1992

conviction for unauthorized use of a motor vehicle, a 1989 conviction for possession of a prohibited weapon, and a 1987 conviction for auto theft.

Appellant testified at trial.  On direct examination, he admitted that he had previously been convicted of the three offenses.  He denied robbing Feit.

The jury found appellant guilty.

*Tolbert*, at \*1-3 (footnote omitted).

## The Applicable Legal Standards

A.    <u>Habeas Review</u>

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal

principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable.  *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

B.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a

genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### Insufficiency of the Evidence

Petitioner argues that the evidence is insufficient because complainant's visual identification of him as her assailant was "less than 100% certain." Respondent contends that this issue is procedurally barred because petitioner did not challenge the sufficiency of the evidence on direct appeal and improperly raised it on state collateral review.

The record reveals that petitioner did not challenge the sufficiency of the evidence on direct appeal, and that on state habeas review, the challenge was rejected as "not cognizable in post-conviction habeas proceedings." *Ex parte Tolbert*, p. 24. The Texas Court of Criminal Appeals expressly relied on this finding in denying state habeas relief. *Id*., p. 1.

Accordingly, the claim was not properly presented to the state courts and cannot be considered here unless petitioner demonstrates both good cause for the default and actual prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice in that he is actually innocent. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)*; Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

In his response to the motion for summary judgment, petitioner argues that his claim is not barred because the State has misconstrued his argument. Petitioner states that he is challenging not the sufficiency of the evidence, but the State's failure to prove his identity as complainant's assailant because the State cannot prove identity if an eyewitness is less than "100% certain" of the identification. However, petitioner alleged in his state habeas application that, "The evidence cannot fairly be deemed sufficient to have established guilt beyond a reasonable doubt" because "the victim spoke in percentages of uncertainty stating 75% to 80% but never the required 100% needed in a criminal case." (Docket Entry No. 8-2, p. 12.) Petitioner's claim on collateral review and in the instant proceeding are one and the same: that the evidence is insufficient because complainant was less than "100% certain" in her visual identification of him as her assailant. It was this precise challenge that petitioner failed to raise on direct appeal, and that the state habeas court found unavailable on collateral review. The State has not misconstrued petitioner's habeas ground, and his ground is procedurally barred from this Court's consideration.

8

Nevertheless, the Court has reviewed the legal sufficiency of the evidence in the interest of justice, and finds that the evidence set forth by the state court of appeals in its opinion is itself enough to defeat a legal sufficiency challenge.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that, in reviewing the sufficiency of the evidence, the federal standard for review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).

Moreover, in rejecting petitioner's challenge to the reliability of complainant's identification on direct appeal, the state appellate court noted that, "[Complainant] apparently was comfortable expressing a less than one-hundred percent certainty after viewing the second man.  Having said she would definitely recognize his voice, she did so."  The court further observed that, "When she saw appellant at the show-up, Feit was seventy-five to eighty percent sure appellant was the person who robbed her.  When she heard his voice, however, she was sure he was the person."  When complainant heard petitioner's voice, which witnesses described as "distinctive," she said, "That's him.  That's him.  That's him." *Tolbert*, *3-4.  The record shows that, although petitioner was not "100% certain" of her *visual* identification of petitioner, her identification based on his *voice* was immediate and unequivocal.  Petitioner fails to show legal insufficiency of the evidence to support his conviction.

The state court denied habeas relief.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, Supreme Court

precedent or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

*Brady Violation*

Petitioner next complains that "the prosecution failed or refused to disclose the exculpatory, material, and indispensable evidence of the gun that was alleged to have been" in his possession during the offense. According to petitioner, the State recovered a gun used in the robbery, found it to be exculpatory of his guilt, and kept it from him. As proof, he argues that the indictment alleged he exhibited a gun and the complainant testified that petitioner threatened to shoot her.

In arguing that the State withheld the evidence, petitioner raises a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, suppression by the prosecution of material evidence favorable to the defendant, following a request for such evidence, violates the defendant's due process rights under the Fourteenth Amendment. To establish a *Brady* violation, a petitioner must establish that the prosecution suppressed evidence that was material and favorable to the defense. *Id.*, 373 U.S. at 87-88. *See also Jackson v. Johnson*, 194 F.3d 641, 648 (5th Cir. 1999).

In rejecting petitioner's *Brady* claim on collateral review, the trial court found that he failed "to allege sufficient facts which, if true, would demonstrate that the State withheld

10

exculpatory evidence." *Ex parte Tolbert*, p. 24.  The Texas Court of Criminal Appeals expressly relied on this finding in denying habeas relief. *Id.*, p. 1.

Petitioner presents no probative summary judgment evidence that the State recovered a gun used in the offense, much less that the gun exonerated him as the assailant.  Petitioner's conclusory allegations to the contrary are insufficient to raise a genuine issue of material fact precluding summary judgment on this issue, and his claim is without merit. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

The state court denied habeas relief on this issue.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, Supreme Court precedent or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687.  The failure to demonstrate either deficient performance or actual

prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

12

At trial, trial counsel moved to suppress complainant's identification of petitioner as unreliable.  Petitioner argues that trial counsel should have objected to, and moved for a mistrial based, on complainant's visual identification of him as being less than "100% certain."  In rejecting petitioner's ineffective assistance claim on collateral review, the trial court found that, "In all things, the applicant fails to show that trial counsel's conduct fell below an objective standard of reasonableness or that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different."  *Ex parte Tolbert*, p. 24.  Petitioner provides this Court no legal authority supporting his argument that complainant's visual identification of him as her assailant was inadmissible because she was not "100% certain," and trial counsel was not deficient in failing to raise  meritless objections or arguments.  *Koch*, 907 F.2d at 527.  Petitioner fails to show that, but for trial counsel's alleged error, there is a reasonable probability that the results of the proceeding would have been different, and petitioner demonstrates neither deficient performance nor prejudice.

The state habeas court denied relief on this issue.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

13

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 15) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE.   Any and all pending motions are DENIED AS MOOT.   A certificate of appealability is DENIED.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on March 23, 2011.

Gray H. Miller
United States District Judge

14